UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOAQUIN VALLEY INSURANCE AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>GALLAGHER BENEFIT SERVICES, INC.<br><br>Defendant. | Case No. 1:17-cv-00861-EPG<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR RECONSIDERATION RE THE COURT'S RULING: (1) DENYING PLAINTIFF'S MOTION IN LIMINE NO. 2 TO EXCLUDE ARGUMENT OR EVIDENCE OF COLLATERAL SOURCE PAYMENTS; AND (2) GRANTING DEFENDANT'S MOTION IN LIMINE NO. 1 THAT EVIDENCE OF PREMIUM SJVIA HAS CHARGED TO MAKE UP FOR ITS DEFICIT POSITION IS RELEVANT AND ADMISSIBLE**<br><br>(ECF NO. 117) |

Plaintiff San Joaquin Valley Insurance Authority ("the SJVIA"), a joint powers entity, brings this suit against its former benefits consultant Defendant Gallagher Benefit Services ("GBS") for Professional Negligence and Malpractice, Negligent Misrepresentation, and Breach of Contract. SJVIA alleges that "[t]hroughout GBS's tenure as consultant for SJVIA, GBS provided grossly negligent consulting and actuarial services to SJVIA, which significantly damaged SJVIA and created a funding deficit of more than $20 million. GBS made critical errors in its monitoring, reporting, projections, and strategy recommendations." (ECF No. 1-1, at p. 18).

GBS seeks to introduce evidence that any damages caused by GBS have been recouped by SJVIA because SJVIA raised premiums on continuing participants of SJVIA to recover from the

1

shortfall. The parties previously filed cross motions *in limine* on whether evidence of the alleged increased premiums is admissible to reduce SJVIA's damages. SJVIA claims that California's collateral source rule bars such evidence; GBS contends that the collateral source rule does not apply to these facts and that precluding such evidence would result in an impermissible double recovery for SJVIA.

On January 30, 2020, the Court issued a ruling in which it granted GBS's motion on the issue and ruled that evidence of the SJVIA's current recovery of the alleged shortfall of premiums is admissible while simultaneously denying the SJVIA's motion *in limine* to "exclude Argument or Evidence of Collateral Source Payments." (ECF No. 114, p. 29.) ("the order"). The Court rested its holding in large part on its legal conclusion that "SJVIA's collection of additional premiums after 2016 does not fit within any of the categories described by the California Supreme Court as qualifying for the collateral source rule." (ECF No. 114, at p. 19).

On January 31, 2020, the SJVIA filed a motion for reconsideration of the order. (ECF No. 117.) GBS filed an opposition. (ECF No. 119.)

For the following reasons, the Court GRANTS the SJVIA's motion for reconsideration and reverses its rulings on the parties' cross-motions *in limine* regarding the collateral source rule. Accordingly, SJVIA's motion *in limine* No. 2 (ECF No. 88) is GRANTED and GBS' motion *in limine* No. 1 (ECF No. 84) is DENIED.

**I.     LEGAL STANDARDS FOR MOTION FOR RECONSIDERATION AND CHOICE OF LAW**

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Further, the Court notes that it is bound to apply state substantive law in this matter, as it sits in diversity. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). A federal court is bound by the decisions of a state's highest court when interpreting state law. *Arizona Elec. Power Coop., Inc. v. Berkeley*, 59 F.3d 988, 991 (9th Cir. 1995). However, "[i]n the absence of such a decision, a federal court must predict how the highest state court would decide

2

the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." *Id.*

## II. COURT'S PREVIOUS ORDER, SUBJECT TO RECONSIDERATION

In its previous order, the Court found the collateral source rule inapplicable to SJVIA's ability to make up a premium shortfall allegedly caused by GBSs conduct. In so doing, the Court relied heavily upon *Helfend v. S. Cal. Rapid Transit Dist.*, 465 P.2d 61. 63 (Cal. 1970), in which the California Supreme Court examined the origins and purposes of the collateral source rule. The Court relied particularly on *Helfend's* description of the collateral source rule as available in "tort cases in which the plaintiff has been compensated by an independent source—such as insurance, pension, continued wages, or disability payments—for which he had actually or constructively…paid or in cases in which the collateral source rule would be recompensated from the tort recovery through subrogation, refund of benefits, or some other arrangement." *Id.* at 69.

Relying on that description as a limitation of the collateral source rule's application in California, the Court found the rule inapplicable to the SJVIA's ability to recoup underfunding through increased premiums on remaining members and participating entities after the termination of the relationship with the SJVIA:

> As an initial matter, this is not a case involving an insurance payment, as in *Helfend*. It also does not involve any entity that SJVIA actually or constructively paid in order to recover in the event of a tort. The Court has also considered whether the "collateral source would be recompensated from the tort recovery through subrogation, refund of benefits or some other arrangement." There is no evidence of any explicit agreement to subrogate or refund benefits.

(ECF No. 114, p. 19.)

The Court further noted that neither party had presented any California authority applying or refusing to apply the collateral source rule in a similar case.

The Court then discussed the *Milliman Inc. v. Maryland State Retirement and Pension System*, 25 A.3d 988, 421 Md. 130 (Md. 2011) case at length in which the Maryland High Court found reimbursement under similar circumstances as those at issue here to be from a collateral source, including the following:

> [T]he Board rejected Milliman's argument that the System was not damaged insofar as the taxpayers would fund any deficiency, because that "perspective subvert[ed] the entire function and purpose of actuarial analysis": An additional one of Milliman's alternative arguments against the award of any damages in the face of a determination of breach and liability is that MSRPS is not harmed, because, notwithstanding 22 years of Milliman's actuarial errors, it is undisputed that ultimately the retirement and pension systems will be fully funded in accordance with law. . . .
>
> However, this perspective subverts the entire function and purpose of actuarial analysis, which is to determine how much to contribute and when. If the Board were to accept this argument, an actuary could satisfy its contractual obligations to a client by training a monkey to punch random keys on a calculator. MSRPS, the Governor, and Legislature could agree to appropriate the amount thus randomly determined to be allocated toward pension funding, with the understanding that some group of State taxpayers sometime in the future would make up the difference in the event of a deficit or reap the rewards in the event of a surplus, and the actuary would always be held harmless for any calculation error, no matter its basis or magnitude.
>
> Certainly, this is not an acceptable standard of professionalism for actuaries, nor is it the one in force, nor would its adoption benefit any actuarial firm, nor does such a lax standard characterize the usual excellent work of the competent, impressive, highly trained, skilled, and careful actuarial experts engaged by Milliman. Instead, the approval of such an argument would render actuarial calculations pointless. Adopting this position would also undermine the extremely important statutory objectives of leveling contributions, protecting inter-generational equity, and pre-funding defined benefits. That the losses incurred by MSRPS have now been amortized and already partially restored is irrelevant to Milliman's responsibility because the reimbursement made to date is *from a collateral source*, namely budgets adopted in years subsequent to the years and in different amounts than the appropriations that should have been made and would have been made but for Milliman's error.

*Milliman, Inc. v. Maryland State Retirement and Pension System*, 421 Md. 130, 146–147 (2011) (emphasis added).

The Court noted that it found this reasoning persuasive as a matter of policy perspective, and explained in its prior order:

> This reasoning in *Millman* gives the Court significant pause. As in *Millman*, GBS argues, at least for purposes of this motion, that no matter how faulty or negligent its advice to SJVIA, it is not liable for damages so long as *SJVIA* eventually recovers its shortfall from renewing members. Like in *Millman*, this recovery will likely come from taxpayers as the members are public entities. Indeed, GBS has taken the position, described above in connection with the expert report of Mr. Toole, that damages must always be $0 because there is always an opportunity to seek additional premiums in the future. The Court is indeed concerned that allowing GBS to rely on such later payments to reduce or eliminate damages "subverts the entire function and purpose of actuarial analysis, which is to determine how much to contribute and when." From a policy perspective, the Court understands why the *Millman* court excluded such tax payer funded reimbursement from damages.

(ECF No. 114, at p. 21). However, the Court ultimately determined that, as a matter of California law, the payments at issue in this case and in *Milliman* fell outside the scope of the collateral source rule as defined by the California Supreme Court in *Helfend*.

### III. SJVIA'S MOTION FOR RECONSIDERATION

On January 31, 2020, SJVIA filed its motion for reconsideration of the Court's order. (ECF No. 117). SJVIA argues:

> California courts have extended the collateral source rule beyond the two general categories of compensation used for illustrative purposes in *Helfend v. S. Cal. Rapid Transit Dist.*, 465 P.2d 61 (Cal. 1970). The Court clearly erred because its entire analysis of the collateral source rule is based on an incorrect legal premise: that under California law, the collateral source rule only applies to certain categories when the plaintiff has been: (1) compensated by an independent source for which he actually or constructively paid (such as insurance, pension, continued wages, or disability payments); or (2) the source of the collateral payment will be recompensed from the tort recovery through subrogation, refund of benefits, or some other arrangement.
>
> Contrary to the Court's reasoning in its order, California courts have recognized the application of the collateral source rule well beyond these narrow categories, including instances where, as here, the tort victim attempts to recover its losses by raising the price it charges to third parties. Because the Court misapprehended the controlling law, it should reverse its prior decision . . . .

(ECF No. 117, at p. 5).

The SJVIA relies primarily on *Phillip Chang & Sons Assocs. v. La Casa Novato*, 222 Cal. Rptr. 800 (Cal. App. 1986) ("*Chang*"). In *Chang*, the plaintiff, a building purchaser, brought an action for damages for intentional and negligent misrepresentation against the defendant seller for misrepresentations that the roofs on the building were sound and subject to warranty. The buildings that the plaintiff purchased were built with Federal Housing Administration ("FHA") financing and subject to an FHA mortgage. The trial court found in favor of plaintiff on liability.

As for damages, the defendant attempted to introduce evidence that "the FHA regulations authorized, upon approval of application thereof, an increase in rentals to recoup expenses incurred by [the plaintiff] and that [the plaintiff] made such an application which had been approved by the FHA." *Id.* at 803. The trial court excluded the evidence.

The California appellate court affirmed and found that the collateral source rule applied to

5

bar evidence of payments the plaintiff obtained pursuant to FHA-approved rent increases. Specifically, the Court found application of the collateral source rule appropriate even though "insurance, pension, continued wages, or disability payments for which the plaintiff actively or constructively paid" were not at issue and even though the collateral source would not be "recompensed from the tort recovery through subrogation, refund of benefits, or some other arrangement," explaining:

> Appellant contends evidence of respondent's right to FHA-authorized rental increases is not made inadmissible by the collateral source rule. Appellant argues the application of the collateral source rule to the facts of the instant case would make no sense inasmuch as respondent showed no foresight nor did it make any contribution toward its future security, two factors traditionally relied upon in support of application of the collateral source rule. Appellant further argues that the second condition where the collateral source rule is traditionally applied—the third party providing benefits is entitled to recover from the tortfeasor by virtue of a right of subrogation—is similarly lacking and thus, application of the collateral source rule is inappropriate. Arguing that the collateral source rule, when properly applied, prevents plaintiffs from receiving a windfall, appellant contends "…a gratuitous windfall—neither bargained for nor paid for, and devoid of subrogation—is precisely what [respondent] sought in the case at bench. Application of the collateral source rule to [respondent's] recovery would subvert the rule, nor further it."
>
> Respondent contends the FHA-authorized rental increases constitute "sources' 'wholly independent' of the appellant and therefore [are] properly excluded under the collateral source rule." Respondent further argues the collateral source rule is equally premised on basic notions of justice and that it would be unfair to permit a defrauding party to escape liability for damages by showing that the victim's tenants are paying increased rent. Finally, respondent suggests the restrictive FHA regulations imposed on an FHA borrower constitutes the "'quid pro quo' which the FHA landlord pays for the favorable loan.'"
>
> The record in the instant case does not reveal any evidence of any right of subrogation, refund of benefits or any other arrangement which might reasonably be construed to fall within the general realm of subrogation. In *Helfend*, of course, the Supreme Court justified application of the rule in a case where the plaintiff had been compensated by an "independent collateral source" (2 Cal.3d at p. 13, 84 Ca.Rptr. 173, 465 P.2d 61), citing insurance, pension benefits, continued wages, and disability payments as illustrative, but not exclusive examples of collateral source.
> …
> Most jurisdictions, including California, have balanced the conflicting principles of tort law brought to a focus by the collateral source rule—that of compensating the plaintiff only for those losses actually sustained versus avoiding a "windfall" to the defendant by granting to him a credit for the reasonable value of collateral benefits received by the plaintiff—in favor of excluding evidence of "benefits" received by the plaintiff from a source wholly independent of and collateral to the tortfeasor. (*See Yarrington v. Thornburg* (Del. 1964) 8 Storey 152, 205 A.2d 1; *City of Marion v. Flanary* (Ky.App.1959) 803S *Thomas v. Paper Haulers, Inc.* (La. App. 1964) 165 So.2d 61; *Royer v. Eskovitz* (1960) 358 Mich. 279, 100

6

N.W.2d 306; *Dahlin v. Kron* (1950) 232 Minn., 312, 45 N.W.2d 833; *Pritt v. Terminal R.R. Ass'n. of St. Louis* (Mo. 1952) 251 S.W.2d 622; *Rigney v. Cincinnati Street Railway Co.* (1954) 99 Ohio App. 105, 131 N.E.2d 413; *Patusco v. Prince Macaroni, Inc.* (1967) 50 N.J.365, 235 A.2d 465; *Powers v. Temple* (1967) 250 S.C. 149, 156 S.E.2d 759; *Stone v. City of Seattle* (1964) 64 Wash.2d 166, 391 P.2d 179.) The principle has also been applied to refuse the admission of evidence of indirect benefits received by the plaintiff, including income tax savings or the fact plaintiff's expenses were decreased during hospitalization. (22 Am.Jur.2d (1965) Damages, § 206, p.287.)

Appellant contends the absence of a right of subrogation or refund in the instant case will operate to confer upon respondent a windfall and defeat the basic compensatory purpose of tort damages. However, the real issue is not whether a windfall is to be conferred upon either party, but rather which party shall receive the benefits of a windfall which presumably already exists. As between the insured plaintiff and the tortfeasor, it would seem that justice compels the conclusion the former's claim is the better. (*See Helfend v. So. Cal. Rapid Transit Dist*., supra 2 Cal.3d at pp. 11-12, 84 Cal.Rptr. 173, 465 P.2d 61.) In any event, it is clear the possibility of double recovery in favor of respondent will not impose a double burden on appellant; appellant, as tortfeasor, bears responsibility only for the single burden of his wrong.

…

With respect to projects subject to federal mortgage insurance and intended to provide low and moderate-income housing, rental increases unrelated to normal economic and market conditions would frustrate the goals of Congress as embodied in the foregoing legislation. In other words, to allow a fraudulent tortfeasor, as in the instant case, to benefit from the fact the victim may be able to receive FHA approval to increase rentals is contrary to the policy of providing as affordable housing as possible to deprived Americans. As between a tortfeasor and innocent tenants of insured mortgage housing, the latter certainly possess the superior equities. To permit the tortfeasor to bring in evidence of the victim's capacity to apply for rental increases in order to mitigate damages will help ensure the innocent tenant will ultimately bear the burden of higher housing costs, rather than encouraging recovery of costs in the form of a civil judgment against the tortfeasor.

*Id.* at 804-809.

GBS opposed the motion for reconsideration. (ECF No. 119). As an initial matter, GBS argues "and at this point, it is time for the parties to simply get on with it. SJVIA's motion for reconsideration is a distraction from the heavy work facing the Court and the parties." *Id.* at 2. GBS also argues that SJVIA fails to meet the standards for reconsideration. *Id.* GBS claims that SJVIA could have cited to *Chang* earlier, yet failed to do so. It also distinguishes the *Chang* case on its facts.

\\\

\\\

\\\

7

## IV. ANALYSIS

### A. Whether California Law Limits the Collateral Source Rule to the Situations Described in *Helfend*

The Court now turns to whether it committed "clear error" in its prior order by resting on a faulty understanding of California law on the collateral source rule. After significant consideration, it holds that it did so.

As described above, the Court's prior order rested in large part on its interpretation that California law limited the collateral course rule to specific categories set forth in *Helfend*, i.e., "tort cases in which the plaintiff has been compensated by an independent source—such as insurance, pension, continued wages, or disability payments—for which he had actually or constructively…paid or in cases in which the collateral source rule would be recompensated from the tort recovery through subrogation, refund of benefits, or some other arrangement."

Defendants in the *Chang* case made a similar legal argument, but it was rejected by the California trial and appellate courts. *Chang*, 117 Cal.App.3d at 167 (stating that the California Supreme Court in *Helfend* listed certain categories as "illustrative, but not exclusive, examples of a collateral source"). Rather, the *Chang* court explained that California's collateral source doctrine "provides that if an injured party received some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." *Id.*, at 166 (internal citations and quotations omitted).

The facts in the present case meet the contours of the collateral source doctrine as set forth in *Chang*. Here, GBS seeks to introduce evidence of elevated premiums collected by SJVIA after GBS stopped consulting for SJVIA, in order to make up for the shortfall allegedly caused by GBS's tortious acts. Such elevated premiums constitute "compensation" for SJVIA's injuries from a "source wholly independent of the tortfeasor, i.e., GBS.

The *Chang* Court also discussed the competing policies of preventing a windfall to the Plaintiff through double recovery and avoiding a windfall to defendant by giving it the credit of benefit given by collateral sources. The *Chang* Court explained that California resolves such

competing interests in favor of excluding evidence of benefits received by the plaintiff from a source wholly independent of and collateral to the tortfeasor, explaining:

> Most jurisdictions, including California, have balanced the conflicting principles of tort law brought to a focus by the collateral source rule-that of compensating the plaintiff only for those losses actually sustained versus avoiding a "windfall" to the defendant by granting to him a credit for the reasonable value of collateral benefits received by the plaintiff-in favor of excluding evidence of "benefits" received by the plaintiff from a source wholly independent of and collateral to the tortfeasor. (See *Yarrington v. Thornburg* (1964) 58 Del. 152 [205 A.2d 1, 11 A.L.R.3d 1110]; *City of Marion v. Flanary* (Ky.App. 1959) 324 S.W.2d 803; *Thomas v. Paper Haulers, Inc*. (La.App. 1964) 165 So.2d 61; *Royer v. Eskovitz* (1960) 358 Mich. 279 [100 N.W.2d 306, 2 A.L.R.3d 286]; *Dahlin v. Kron* (1950) 232 Minn. 312 [45 N.W.2d 833]; *Pritt v. Terminal R. R. Ass'n. of St. Louis* (Mo. 1952) 251 S.W.2d 622; *Rigney v. Cincinnati Street Railway Co*. (1954) 99 Ohio App. 105 [58 Ohio Ops. 202, 131 N.E.2d 413, 52 A.L.R.2d 1443]; *Patusco v. Prince Macaroni, Inc*. (1967) 50 N.J. 365 [235 A.2d 465]; *Powers v. Temple* (1967) 250 S.C. 149 [156 S.E.2d 759]; *Stone v. City of Seattle* (1964) 64 Wn.2d 166 [391 P.2d 179].) The principle has also been applied to refuse the admission of evidence of indirect benefits received by the plaintiff, including income tax savings or the fact plaintiff's expenses were decreased during hospitalization. (22 Am.Jur.2d (1965) Damages, § 206, p. 287.)

*Id.* at 169-170. Applying this principle to the present facts would favor applying the collateral source rule. While it may result in SJVIA receiving benefits from both the collateral source and GBS, it would avoid a windfall to GBS that would result from granting GBS the value of the benefit received from the collateral source.

This stated principle lines up much more closely to the case in *Millman* discussed extensively above, insofar as allowing evidence of premiums raised after the shortfall "subverts the entire function and purpose of actuarial analysis, which is to determine how much to contribute and when." *Milliman*, 421 Md. at 146–147.

GBS argues that the *Chang* ruling rested on the fact that innocent tenants of FHA housing were bearing the cost of recovery, whereas, GBS argues, here it is the same counties who underpaid premiums earlier. SJVIA counters that the burden of additional premiums is being borne by innocent individual employees who use SJVIA as insurance. Moreover, SJVIA claims they are not the same individuals who paid lower premiums earlier because many cities who underpaid left SJVIA when it suffered financial problems, and that underpayment is now being borne by only those municipalities and their employees that remain.

9

The Court does not have any reliable factual record to compare the individual municipalities, not to mention employees, who underpaid earlier versus overpaid later. But this does not appear to be the relevant inquiry according to *Chang* and other California cases. Those cases only compare the collateral source with the tortfeasor. Here, it is undisputed that the collateral source—entities/employees who paid elevated premiums—are distinct from the alleged tortfeasor—GBS. The collateral source rule as defined by *Chang* thus applies.

The Court also looks to the case of *Arambula v. Wells*, 85 Cal.Rptr.2d 854 (Cal. App. 1999), in which the California appellate court considered whether gratuitous benefits to a tort victim in the form of a weekly salary for employment with a family-owned business was a collateral source payment. There, the defendant sought to stymie the plaintiff's lost wage claim by introducing evidence that the plaintiff had continued to receive a gratuitous salary. The defendant—citing *Helfend*—argued that the collateral source rule was inapplicable because *Helfend* limited the collateral source rule to instances where "plaintiffs incurred an expense, obligation, or liability in obtaining the services for which they seek compensation." *Id.* at 586. The California appellate court disagreed and found that gratuitous payments could come within the scope of the collateral source rule; as for *Helfend* in particular, the court noted that it did not limit the scope of the collateral source rule to situations where the plaintiff incurred some expense for the collateral payment or otherwise had a right of subrogation or reimbursement: "*Helfend* itself did not see it that way. To the contrary, the court cautioned, 'We expressly do not consider or determine the appropriateness of the rule's application in the myriad of possible situations which we have not discussed or which are not presented by the facts of this case.'" *Id.* at 587 (quoting *Helfend*, 465 P.2d at 63, n. 3). Given California precedent and public policy in favor of encouraging gratuitous payments, the *Arambula* court held that the collateral source rule applied to certain gratuitous payments.

Cases like *Chang* and *Arambula* demonstrate that California appellate courts do not consider the collateral source rule limited to those situations expressly set forth in *Helfend*. Sitting in diversity, these cases are persuasive authority. *See Kwan v. SanMedica International*, 854 F.3d 1088, 1093 (9th Cir. 2017) (noting that state appellate courts sitting in diversity are not to be

ignored in determining an issue of state law that the state supreme court has not addressed).

Therefore, instead of cabining its analysis to those payments and situations *Helfend* explicitly endorsed as within the scope of the collateral source rule, the Court asks whether this case involves receipt of funds to compensate tort injury that are received from a source wholly independent from the tortfeasor. *McLean v. Runyan*, 222 F.3d 1150, 1155-56 (9th Cir. 2000) (noting that under the collateral source rule, "benefits received by the plaintiff from a source collateral to the defendant may not be used to reduce that defendant's liability for damages") (citations omitted).

The Court finds that it does: the participating entities and members of the SJVIA, through whom payments are purportedly being made to offset damage for GBS's alleged misconduct, are wholly independent and collateral from GBS. Thus, any attempt to introduce evidence of such payments is prohibited by the collateral source rule under California law.

This result squares with the result reached by the only other appellate court to have specifically addressed a similar issue: *Milliman, Inc. v. Maryland State Retirement and Pension Sys.*, 421 Md. 130, 157-161 (2011). Again, the *Milliman* court found similar payments from taxpayers to refund a plan that had been decimated due to actuarial negligence be collateral source payments. The Court finds that such a ruling here, as it did in *Milliman*, furthers important policy objectives, namely, ensuring that actuaries are not effectively immune from liability under the argument that any damage caused may be made up through increased premiums or other payments. *See* (ECF No. 114, p. 19-20) (quoting and discussing *Milliman, Inc.*, 421 Md. At 146-47).

Accordingly, for these reasons, the Court erred in previously holding that the collateral source rule as applied by California courts does not apply to the facts of this case. The Court now holds that elevated premiums collected by the SJVIA from remaining members and participating entities to negate underfunding allegedly caused by GBS's allegedly faulty advice and recommendations come within the scope of California's collateral source rule. The Court previously committed "clear error" in holding otherwise.

///

## B. Whether this Case is Predominantly Grounded in Breach of Contract, Thus Precluding Application of the Collateral Source Rule

The Court now examines GBS's alternate argument that the collateral source rule does not apply because this is a contract case, and not a tort case. The Court did not address this argument in its prior order in light of its holding that the collateral source rule would not apply to these facts in any event. Given the Court's revised analysis above, it turns now to this alternate argument.

Specifically, GBS argues that "[w]hile allegations of 'professional negligence' are made, the gravamen of the case is not tort, but breach of commercial contract." (ECF No. 84, p. 11). GBS cites *Plut v. Fireman's Fund Ins. Co.*, 85 Cal. App. 4th 98, 106-09 (2000) for the proposition that the collateral source rule does not apply to breach of contract claims under California law.

GBS is correct that *Plut*—which dealt with a bad faith breach of an insurance contract case—held that the California collateral source rule is generally inapplicable to breach of contract actions. Notably, however, *Plut* did not involve allegations of the negligent breach of a professional services contract, like those at issue here. Indeed, the defendant's actions in *Plut* were not described as tortious at all but treated as purely sounding in breach of contract. *See, id.* at 103-104 ("Because the trial court evidently offset the award for *breach of contract* by these settlement funds and payments, the key issues concern whether the trial court properly adjusted the award for *breach of contract* in this manner.") (emphasis added).

Here, in contrast, SJVIA's claims clearly include tort claims in addition to breach of contract. SJVIA's first cause of action is "Professional Negligence and Malpractice," and second cause of action is "Negligent Misrepresentation." (ECF No. 1-1, at p. 20-21).

Moreover, courts have found the negligent breach of a professional services contract like the SJVIA alleges here sound in both breach of contract and tort. *See, e.g, City and County of San Francisco v. Cambridge integrated Servs. Group, Inc. No. C 04-1523 VRW*, 2007 WL 1970092 at *3 (N.D. Cal. 2007) (noting that although California Supreme Court decisions have not addressed "the issue of professional services contracts as opposed to mere services contracts," California Court of Appeals cases "continue to apply a rule that negligent failure to exercise reasonable care

in undertaking to perform a professional services contract is a tort as well as a breach of contract"); *see also Moreno v. Sanchez*, 106 Cal. App. 4th 1415, 1435 (Cal. App. 2003) ("Under the common law the established rule is the negligent failure to exercise reasonable care and skill in undertaking to perform a service contract of this type is a tort, as well as a breach of contract"). Federal courts in this circuit applying California law have similarly found that a breach of a professional service contract gives rise to a cognizable tort claim. *See Land O'Lakes Inc. v. Dairyamerica, Inc.*, 2017 WL 495644 at *3 (E.D. Cal. Feb. 6, 2017) (collecting cases).

Indeed, GBS itself argued in connection with a motion seeking partial exclusion of SJVIA's damages expert that SJVIA's damages were limited to actual losses by citing to law regarding professional negligence claims, as well as the parties' contract. (ECF No. 80, at p. 6) ("Both California law on professional negligence and the parties' contracts restrict SJVIA's recovery to actual damages. *Loube v. Loube*, 64 Cal. App. 4th 421, 426 (1998) (professional negligence damages may not "exceed[] actual loss[es]")").

Thus, this case does not merely involve a claim of breach of contract. Instead, it alleges a tortious breach of contract. Although the Court can find no California Supreme Court case on point, California appellate courts have long noted that the collateral source rule has been applied to breach of contract actions with a "tortious or willful flavor." *Patent Scaffolding Co. v. William Simpson Const. Co.*, 64 Cal.Rptr. 187, 191 (Cal. App. 1967) ("The collateral source rule, however, has not been generally applied in cases founded upon a breach of contract, unless the 'breach has a tortious or willful flavor.'") (quoting *City of Salinas v. Souza & McCue Constr. Co., Inc.*, 424 P.2d 921, 926 (Cal. 1967) (*en banc*) overruled in part on other grounds by *Helfend v. Southern Cal. Rapid Transit Dist.*, 465 P.2d 61(Cal. 1970)); *see also El Escorial Owners' Ass'n v. DLC Plastering, Inc.*, 65 Cal.Rptr.3d 524, 542 (Cal. App. 2007) (noting that the collateral source rule applies "where the plaintiff sues for breach of contract and the underlying conduct involves a tort").

Here, the SJVIA alleges a breach of the professional services contract, largely because GBS failed to "exercise due care in performing the services set forth in the Consulting Agreements" and "fail[ed] to perform the services set forth in the Consulting Agreements in the

13

manner of a recognized specialist in those services." (ECF No. 1-1.) The Court finds these allegations to set forth a negligent breach of professional services theory which, as discussed above sounds in both tort and breach of contract. And because the collateral source rule applies to a tortious breach of contract—that is, the breach of contact which violates a duty independent of the contract arising from principles of tort law—it may be applied to this case.

Accordingly, the Court finds the collateral source rule should apply in this case to prevent evidence of premiums or payments from members or participating entities after December 31, 2016 to reduce or eliminate plan underfunding that GBS allegedly caused.

### III. CONCLUSION

For the reasons set forth herein, IT IS ORDERED that:

1. The SJVIA's Motion for Reconsideration (ECF No. 117.) is GRANTED;
2. The SJVIA's Motion *in Limine* No. 2 to Exclude Argument or Evidence of Collateral Source Payments is GRANTED (ECF No. 88); and
3. GBS' Motion *in Limine* No. 1 (ECF No. 84) seeking an affirmative ruling that evidence of premium the SJVIA has charged to make up for its deficit funding position is relevant and admissible is DENIED.

IT IS SO ORDERED.

Dated: **February 5, 2020**          /s/ Erin P. Gross
                                      UNITED STATES MAGISTRATE JUDGE