IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOAQUIN VALLEY INSURANCE AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>GALLAGHER BENEFIT SERVICES, INC.,<br><br>Defendant. | CASE NO. 1:17-cv-00861-EPG<br><br>**ORDER GRANTING, IN PART, THE SJVIA'S MOTION IN LIMINE 3**<br><br>**(ECF No. 88)** |

Plaintiff San Joaquin Valley Insurance Authority ("the SJVIA") brought this suit against Defendant Gallagher Benefit Services, Inc. ("Gallagher") alleging causes of action under California law for (1) breach of contract, (2) professional negligence, and (3) negligent misrepresentation. This order addresses the SJVIA's motion *in limine* 3, filed on January 17, 2020. (ECF No. 84).[1] Gallagher filed its initial response on January 24, 2020. (ECF No. 93). The Court held a hearing on the motion on February 3, 2020. (ECF No. 121). The Court thereafter ordered supplemental briefing. The SJVIA filed its supplemental brief on February 7, 2020. (ECF No. 132). Gallagher filed a response to the supplemental briefing on February 14, 2020. (ECF No. 137.)[2]

---

[1] The Court has ruled on the other motions *in limine*. (ECF No. 130).

[2] The parties argue about the page limits for briefing, with Gallagher filing a motion for leave to file a ten-page supplemental brief. (ECF No. 135.) The SJVIA, which itself filed a brief over five pages, opposes the motion. (ECF

1

## I. BACKGROUND

This case concerns the work Gallagher performed for the SJVIA under the parties' 2010 and 2015 consulting agreements. Under those agreements, Gallagher was to provide services related to SJVIA's setting rates. The parties agree that during their relationship, SJVIA also retained the actuarial firm Demsey Filliger and Associates ("Demsey") to provide, among other things, a GASB 10 report. The dispute in this motion *in limine* concerns if Gallagher may present evidence of Demsey's work at trial.

Initially, the SJVIA moved to prevent Gallagher "from attempting to present evidence or argument that [Gallagher's] obligations under the parties' 2010 and 2015 Consulting Agreements . . . were excused or modified in any way." (ECF No. 88, at p. 12). The SJVIA anticipated that Gallagher might argue that the SJVIA approved Demsey performing work in lieu of Gallagher, and thus waived the requirement that Gallagher perform certain work required by the 2010 and 2015 consulting agreements.

Gallagher responded that it would not argue that the contract had been modified but sought to introduce evidence concerning the work Demsey performed for the SJVIA for other purposes. (ECF No. 93, at 11).

In its supplemental briefing, the SJVIA expanded its request. It asked the Court to prohibit Gallagher from making three arguments: "(1) that Gallagher's contracts with the SJVIA were modified or excused; (2) that [Demsey's] services or reports were a substitute for or similar to the services that Gallagher was required to perform under its contracts with the SJVIA; or (3) that the SJVIA suffered no damages as a result of [Demsey's] services or reports." (ECF No. 132, at p. 4).

The Court addresses those three requests in turn.

## II. ANALYSIS

### A. Modification and Waiver

The Court first addresses whether Gallagher may argue that provisions of either the 2010 or 2015 consulting agreements were modified or waived.

---

No. 137.) The Court has considered all briefing submitted by the parties. Therefore, Gallagher's motion for leave to file a ten-page brief is GRANTED.

The SJVIA argues that California law prohibits any provision of this governmental contract being modified or waived absent a written agreement. *See* (ECF No. 88, at pp. 8-9) (citing *P&D Consultants, Inc. v. Carlsbad*, 190 Cal. App. 4th 1332, 1335, 1341 (2010) ("Unlike private contracts, public contracts requiring written change orders cannot be modified orally or through the parties' conduct."); *Ponte v. County of Calaveras*, 14 Cal. App. 5th 551, 556 (2017)).

Gallagher acknowledges that there were no written modifications of its agreement with SJVIA here. (ECF No. 93, at p. 11). Gallagher represents that it "does not intend to claim its contract was modified or amended by the Demsey work." (ECF No. 93, at p. 16).

Thus, SJVIA's motion *in limine* number 3 is granted insofar as it seeks to bar Gallagher from arguing that Gallagher's obligations under the parties' 2010 and 2015 Consulting Agreements were excused or modified.

The Court notes that while Gallagher concedes that the contract was not modified or waived, it makes several arguments that suggest the same conclusion using different words. For example, it states that "Gallagher witnesses will also explain at trial that they believed SJVIA's retention of Demsey meant 'it wasn't … ask[ing] for [Gallagher] to do' certain actuarial services SJVIA argues were called for by the contract, like to perform an actuarially certified IBNR study." (ECF No. 93, at p. 16) (brackets and ellipsis in original; citation omitted)). Similarly, Gallagher argues that "SJVIA's use of Demsey for actuarial services is relevant to Gallagher's arguments about whether the contractual language actually required Gallagher to perform the services SJVIA claims it should have performed." (*Id.*)

Such arguments are also precluded at trial because they are based on the same claim that by hiring Demsey for certain work, SJVIA changed Gallagher's contractual requirement to do work set forth in the contract. The Court thus rules that Gallagher may not argue that Demsey's retention modified, excused, waived, or otherwise changed Gallagher's obligations under either consulting agreement, including by suggesting in any way that because SJVIA hired Demsey for certain purposes, Gallagher was not required or expected to do what is agreed under the terms of the contracts.

\\\

**B.     Lack of Similarity and Potential Confusion**

Next, the SJVIA moves to preclude Gallagher from arguing "that [Demsey's] services or reports were a substitute for or similar to the services that Gallagher was required to perform under its contracts with the SJVIA[.]" (ECF No. 132, at p. 4). The SJVIA sets forth two arguments for excluding this evidence: (1) it is precluded by Rule 403's balancing test, and (2) it requires expert testimony. The Court denies this aspect of the motion—which, the Court notes, goes beyond the SJVIA's initial requested motion *in limine*.

The parties agree that Gallagher was contractually obligated to prepare an incurred-but-not-reported (IBNR) estimate.[3] SJVIA also retained Demsey to provide certain actuarial services pertaining to a GASB 10 report. (ECF No. 136-14, at p. 11) (contract between the SJVIA and Demsey including payment for up to three GASB 10 reports).

The SJVIA argues that, as a factual matter, Demsey's GASB 10 report is so different from the IBNR that Gallagher had to provide that Gallagher should be precluded from arguing that they similar. (ECF No. 132, at pp. 4-8). According to the SJVIA, quoting the testimony of Demsey's Lou Filliger, a GASB 10 report is retrospective while an IBNR study is prospective.[4] Moreover, an IBNR requires far more information than the GASB 10, and Demsey did not know that Gallagher would rely on his report for its IBNR. (*Id.*). Therefore, according to the SJVIA, showing similarities between Gallagher's and Demsey's services, which would imply that the SJVIA was not damaged, "has no basis in fact and is merely an attempt to mislead the jury and confuse the issues." (ECF No. 132, at p. 8). Accordingly, according to the SJVIA, the Rule 403 balancing test favors exclusion. (*Id.*) ("[Gallagher's] argument that [Demsey's] services and reports are the same or similar to its obligations under the contracts, and therefore that the SJVIA has not been damaged, has no basis in fact and is merely an attempt to mislead the jury and confuse the issues."); Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair

---

[3] According to Gallagher, IBNR refers to "insured losses that have already been incurred but on which the plan has not yet received claims." (ECF No. 136 at p. 5 n.4).
[4] Gallagher appears to concede this. (ECF No 136, at p. 8) ("[T]he Demsey reports measured SJVIA's actual IBNR, and are thus relevant to determining whether Gallagher's IBNR assumptions—and its consistent recommendations that SJVIA keep a reserve buffer on top of IBNR—had been reasonable or far off the mark.")

4

prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

In contrast, Gallagher argues the reports are similar and that Demsey's work was broader than the SJVIA claims. According to Gallagher, Demsey was also hired to perform an IBNR. It points to the SJVIA's contract with Demsey, which appears to require Demsey to perform work regarding IBNR. (ECF No. 136-14, at p. 13) ("Scope of Services" includes "incurred but not reported (IBNR) reserves" and "[e]valuation of adequacy of funding levels and reserves to pay for self-insured claims, expenses, and change in IBNR reserves"). It also points to board minutes and agendas from the SJVIA reflecting the same. *See, e.g.,* (ECF No. 136-15, at p. 3) (Demsey's proposed scope of services including materially the same language as "Scope of Services" as in the final agreement between Demsey and the SJVIA); (ECF No. 136-17, at p. 5) (purpose of hiring Demsey for GASB 10 evaluation is to "allow us to properly book in our financial report our liabilities and confirm that our rate structure is sound from an actuarial perspective"). The Demsey report also appears to include Demsey's "recommended Incurred But Not Reported (IBNR) reserves" and a table of IBNR reserves. (ECF No. 136-18, at pp. 5, 9).

With these similarities in mind, Gallagher claims Demsey's work is relevant to causation because Demsey's report may help show that Gallagher's IBNR estimates were accurate. (ECF No. 136, at p. 2) ("[T]he work done by Demsey (and Gallagher's Glen Volk) suggests there would have been no materially different result had Gallagher's actuaries done additional work . . . ."). Gallagher also argues the Demsey evidence is relevant to whether Gallagher was negligent. For example, Gallagher argues it checked its work against Demsey's IBNR analysis, and Gallagher recommended setting higher IBNR reserves than those Demsey found necessary. (ECF No. 93, at p. 16).

After reviewing the arguments and evidence presented, the Court declines to preclude evidence of Demsey's work or argument that Demsey's work was similar to Gallagher's. This is a factual dispute best suited for the jury. Gallagher has presented sufficient evidence to be able to make such an argument. Moreover, the evidence appears relevant to the issues of causation and breach of standard of care.

**C.     Need for Expert Witness**

In the alternative, the SJVIA claims that an expert witness is necessary to establish any similarity between Demsey's work and the job Gallagher was hired to do. "Expert testimony is necessary when lay persons are unable to make an informed judgment without the benefit of such testimony." *Colt v. Lewis*, 20013 WL 22519362 at *5 (N.D. Cal. Oct. 30, 2013) (citing *Caro v. Calderon*, 165 F.3d 1223, 1227 (9th Cir. 1999)). The SJVIA argues that Gallagher will need "an expert to explain what a GASB 10 report is, what type of actuarial services are required for rate setting or setting funding levels, and whether or not these services are comparable and interchangeable such that the SJVIA was not damaged." (ECF No. 132, at p. 7).

The SJVIA cites to *People v. Kinder Morgan Energy Partners, LP.*, 159 F. Supp. 3d 1182 (S.D. Cal. 2016). In that district court case, California and the City of San Diego alleged Kinder Morgan contaminated an aquifer, and they sued Kinder Morgan for nuisance and trespass, each of which requires proof of damages. *Id.* at 1188, 1198-99. Critically, the plaintiffs' case "hinge[d] on proof of a viable water project and expert testimony regarding the values of inputs into Dr. Waters' methodology for calculating damages." *Id.* at 1198 n.10. However, the plaintiffs had no experts to make those two showings. The plaintiffs argued their lay witnesses could show that "contamination was a substantial factor in not yet developing the [relevant] aquifer as emergency water storage," but the court was unpersuaded, saying the plaintiffs "sidestep[ ] the issue of damages[.]" *Id.* at 1198. Therefore, Kinder Morgan received partial summary judgment.

Even setting aside that *Kinder* is not binding on this Court, it is distinguishable. The *Kinder* plaintiffs needed to provide evidence about the viability of a water project and scientific proof for damages, but they had no evidence to prove damages. Moreover, they also had no one who could explain why they had a viable water project—a matter which clearly requires an opinion because no percipient witness could say a non-existent project was viable.

Here, the SJVIA has not demonstrated—as a blanket matter—that the facts of Demsey's work and how it overlapped with what Gallagher was required to do is such a technical subject that expert testimony is required to even present the facts of the relationship between those entities.  It seems possible that factual witnesses at trial could describe the work of each in a way

6

that would allow the jury to understand similarities and differences without an expert witness. Indeed, the parties have already attempted to do so in their motion papers to this Court.[5]

### D. Damages

The SJVIA argues that permitting evidence comparing the reports is tantamount to Gallagher arguing that the SJVIA has not been damaged. And, according to the SJVIA, this is impermissible under the Rule 403 balancing test because it is factually wrong and thus misleading. For the reasons discussed above, this issue is one appropriately left for the jury to decide with the benefit of evidence and cross-examination.

### III. CONCLUSION

For the reasons set forth herein, IT IS HEREBY ORDERED that the SJVIA's motion *in limine* 3 is GRANTED IN PART:

1. Gallagher may not present evidence or argument that the 2010 and 2015 Consulting Agreements were excused or modified.
2. It is denied in all other respects.

IT IS SO ORDERED.

Dated: **June 16, 2020**          /s/ Erica P. Grosjean
                                  UNITED STATES MAGISTRATE JUDGE

---

[5] Nothing in this order precludes the SJVIA from objecting to any question on the basis that it impermissibly calls for an expert opinion, or from arguing to the jury that Gallagher has not presented sufficient evidence supporting this argument at trial.