IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN JOAQUIN VALLEY INSURANCE AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>GALLAGHER BENEFIT SERVICES, INC.,<br><br>Defendant. | CASE NO. 1:17-cv-00861-EPG<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO CERTIFY ORDERS FOR INTERLOCUTORY REVIEW<br><br>(ECF No. 146) |

Plaintiff San Joaquin Valley Insurance Authority ("the Authority") filed a complaint on May 11, 2017 in Fresno County Superior Court for claims of professional negligence and breach of contract. (ECF No. 1-1 at 16). On June 28, 2017, Defendant Gallagher Benefit Services, Inc. ("Gallagher") removed the action to this Court. (ECF No. 1).[1]

On January 30, 2020, shortly before trial was set to begin, the Court granted in part and denied in part several motions *in limine* related to expert evidence and the collateral source rule. (ECF No. 114). The next day, the Authority moved for reconsideration of the Court's ruling on California's collateral source rule, pointing to additional California precedent. (ECF No. 117). On February 5, 2020, the Court granted the Authority's motion to reconsider. (ECF No. 125). The

---

[1] The parties have consented to magistrate judge jurisdiction for all purposes. (ECF Nos. 19-21).

1

Court then continued trial to August 18, 2020. (ECF Nos. 129, 134).

On May 20, 2020, Gallagher, referencing the likelihood of a postponement of trial due to COVID-19, (ECF No. 146 at 19), moved to certify two of the Court's January 30, 2020 orders and the February 5, 2020 reconsideration for interlocutory review, (ECF No. 148 at 2). The Authority filed its opposition on June 4, 2020, (ECF No. 159), and Gallagher replied on June 10, 2020, (ECF No. 150). The Court held a telephonic hearing on the motion June 18, 2020 and also indefinitely postponed trial due to COVID-19. (ECF No. 152). Gallagher's motion to certify the above-referenced orders for interlocutory review is now before the Court.

For the reasons below, the Court will GRANT, IN PART, Gallagher's Motion to Certify Orders for Interlocutory Appeal to the extent Gallagher seeks review of the Court's order granting reconsideration regarding California's collateral source rule (ECF No. 125). Because Gallagher did not adequately brief the other orders, and they do not involve controlling questions of law as to which there is substantial ground for difference of opinion, the motion is also DENIED, IN PART as to the other orders raised in Gallagher's motion.

## I.   LEGAL STANDARDS FOR INTERLOCUTORY REVIEW

Generally, an appellate court reviews a district court's ruling only after the district court has entered a final judgment. Hence, interlocutory review should "be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig. (MDL No. 296)*, 673 F.2d 1020, 1026 (9th Cir. 1981); *accord Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) ("Routine resort to § 1292(b) requests would hardly comport with Congress' design to reserve interlocutory review for exceptional cases while generally retaining for the federal courts a firm final judgment rule." (internal quotation marks and citation omitted)).

Certification under 28 U.S.C. § 1292(b) is proper when a judge determines "(1) that there [is] a controlling question of law, (2) that there [are] substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *In re Cement*, 673 F.2d at 1026; *accord* 28 U.S.C. § 1292(b) ("When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the

opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.").

## II. BACKGROUND

Gallagher moved to certify three orders: (1) granting the Authority's motion for reconsideration regarding the collateral source rule (ECF No. 125); (2) granting in part the Authority's motion to preclude expert testimony of Jim Toole (ECF No. 114 at 9:11-15:6); and (3) granting, in part, one of the Authority's motions *in limine* (ECF No. 114 at 15:7-17:4). (ECF No. 148 at 2). The Court addresses those three orders in turn.[2]

## III. ANALYSIS

### A. Order on Motion for Reconsideration Regarding Collateral Source Rule (ECF No. 125)

#### 1. Collateral Source Rule and Previous Orders

Under California law, a plaintiff is normally "entitled to no more than a single recovery for each distinct item of compensable damages supported by the evidence," "[r]egardless of the nature and number of legal theories advanced by the plaintiff." *Tavaglione v. Billings*, 847 P.2d 574, 580 (Cal. 1993) (citation omitted). Thus, "[d]ouble or duplicative recovery for the same items of damage amounts to overcompensation and is therefore prohibited." *Id*.

The collateral source rule is an exception to that prohibition. It provides that "if an injured party receives some compensation for his injuries from a source wholly independent of the tortfeasor, such payment should not be deducted from the damages which the plaintiff would otherwise collect from the tortfeasor." *Helfend v. S. Cal. Rapid Transit Dist*., 465 P.2d 61, 63 (Cal. 1970).

The parties dispute whether the Authority's recoupment of some or all of its damages through increased healthcare premium payments in subsequent years is subject to the collateral source rule. The Authority's damages expert contends Gallagher's faulty advice led the Authority

---

[2] At the hearing, the Court expressed its doubts about certifying the second and third orders. Gallagher said it was willing to narrow its request to the order concerning the collateral source rule.

to collect $36 million too little in premiums. (ECF No. 81-8 at 34) ("This demonstrates total damages in this case in the amount of $36,594,106"). Gallagher contends it is not liable for those damages. But if it is liable, Gallagher argues that the Authority's damages should be decreased or eliminated because the Authority raised rates on the members that remained or joined after the relevant years.[3] Applying the collateral source rule would prevent Gallagher from introducing evidence that the Authority recouped some or all of its damages by raising rates in subsequent years. Initially, the Court held that the collateral source rule did not apply to this situation. Examining *Helfend*, the leading California Supreme Court case on the rule, the Court noted that the present situation did not fit within any of the categories subject to California's collateral source rule. (ECF No. 114 at 19). The *Helfend* court set forth the public policy considerations favoring the collateral source rule:

> The collateral source rule expresses a policy judgment in favor of encouraging citizens to purchase and maintain insurance for personal injuries and for other eventualities. Courts consider insurance a form of investment, the benefits of which become payable without respect to any other possible source of funds. If we were to permit a tortfeasor to mitigate damages with payments from plaintiff's insurance, plaintiff would be in a position inferior to that of having bought no insurance, because his payment of premiums would have earned no benefit. Defendant should not be able to avoid payment of full compensation for the injury inflicted merely because the victim has had the foresight to provide himself with insurance.

465 P.2d at 66-67. In light of those considerations, the *Helfend* court reaffirmed California's "adherence to the collateral source rule in tort cases in which the plaintiff has been compensated by an independent source—such as insurance, pension, continued wages, or disability payments—for which he had actually or constructively…paid or in cases in which the collateral source would be recompensated from the tort recovery through subrogation, refund of benefits, or some other arrangement." *Id.* at 69.

The parties did not point the court to any California cases extending the collateral source rule beyond those categories to anything like the current situation. (ECF No. 125 at 19). Rather, the closest case presented to the court was *Milliman, Inc. v. Maryland State Retirement and*

---

[3] Several of the Authority's members withdrew. (ECF No. 55-36) (termination notices from non-founding members). They did not pay increased premiums.

4

*Pension System*, 421 Md. 130 (2011). (ECF No. 114 at 19-20). There, the Maryland Court of Appeals faced a similar situation. For public policy reasons, the court held that the collateral source rule applied. *Milliman*, 421 Md. at 146-47. However, the Court declined to follow this case in light of *Helfend's* seemingly more limited application of the collateral source rule in California. (ECF No. 114 at 21-23).

Plaintiff moved for reconsideration of the Court's ruling on January 31, 2020.  (ECF No. 117).  For the first time, the Authority brought *Phillip Chang & Sons Associates v. La Casa Novato*, 177 Cal. App. 3d 159 (1986) to the Court's attention, and the Court reconsidered its earlier ruling. (ECF No. 125). In *Chang*, a building purchaser sued the seller for misrepresenting the condition of and warranty on the building's roofs. The building was financed by the Federal Housing Administration, which permitted the plaintiff to raise rental rates to recoup relevant costs, so the defendant argued that the plaintiff's damages were $0. *Id.* at 163-64. The appellate court applied the collateral source rule to bar evidence that the plaintiff received payments from FHA-approved rent increases. *Id.*

> Most jurisdictions, including California, have balanced the conflicting principles of tort law brought to a focus by the collateral source rule-that of compensating the plaintiff only for those losses actually sustained versus avoiding a "windfall" to the defendant by granting to him a credit for the reasonable value of collateral benefits received by the plaintiff-in favor of excluding evidence of "benefits" received by the plaintiff from a source wholly independent of and collateral to the tortfeasor. The principle has also been applied to refuse the admission of evidence of indirect benefits received by the plaintiff, including income tax savings or the fact plaintiff's expenses were decreased during hospitalization.

*Chang*, 177 Cal. App. 3d at 169-70 (citations omitted).

Finding the principles in *Chang* persuasive, the Court granted Plaintiff's motion for reconsideration and held that California's collateral source rule bars the evidence Gallagher seeks to introduce, *i.e.*, evidence of recoupment of damages from future members through raised rates. (ECF No. 125 at 8-11).

Gallagher now seeks to certify this order, among others, for interlocutory review.

    2.   Controlling Question of Law

Under section 1292(b), a question of law is controlling when "resolution of the issue on

5

appeal could materially affect the outcome of litigation in the district court." *In re Cement*, 673 F.2d at 1026. Here, the Court finds that the following question is controlling:

> A governmental entity that funds health expenses for participating member counties alleges it suffered a shortfall because a consultant's faulty advice caused it to set the member counties' premiums too low for certain years. Does California's collateral source rule bar evidence that the entity increased the premiums for the member counties that remained or joined later to cover the shortfall?

The answer to this question will materially affect the outcome of the litigation in the district court. Gallagher contends that the Authority has recouped most of its alleged damages—and by next year, it might recoup them all. (ECF No. 146 at 7-8) (citing ECF Nos. 146-2, 146-3). Although the Authority does not concede Gallagher's point, permitting Gallagher to present this type of evidence could substantially alter the case. If damages are $0, then it is possible that the Authority's breach of contract and professional negligence claims will fail as a matter of law. *See Bramalea California, Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468, 473 (2004) ("A breach of contract is not actionable without damages."); *Paul v. Patton*, 235 Cal. App. 4th 1088, 1095 (2015) ("The elements of a claim for professional negligence are: . . . (4) actual loss or damage resulting from the professional's negligence.").[4] Therefore, the Court finds that the question above is a controlling question of law.

The Authority contends that a question of law certified under section 1292(b) must be a "pure question of law." (ECF No. 149 at 6). The Ninth Circuit has not decided this, and district courts have gone both ways. *See Elia v. Roberts*, No. 1:16-cv-557-AWI-EPG, 2019 WL 7048762 (E.D. Cal. Dec. 23, 2019) (noting the Ninth Circuit has not addressed the issue and citing conflicting district court cases). Either way, the Court believes the question it certifies now is approximately as "pure" as the ones the Ninth Circuit accepted in *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 687 (9th Cir. 2011) (accepting, *e.g.*, "[w]hether a contract to which a defendant is a party, filed in conjunction with SEC reporting requirements and promising specific conduct by the defendant, can be used as the foundation for a securities fraud action by a

---

[4] The Court is not deciding that the Authority's claims will fail if all its costs have been recouped through increased rates.

nonparty to the contract").

### 3. Substantial Ground for Difference of Opinion

The second requirement for an interlocutory appeal under § 1292(b) is that there must be a substantial ground for difference of opinion.

> To determine if a "substantial ground for difference of opinion" exists under § 1292(b), courts must examine to what extent the controlling law is unclear. Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented.

*Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (certain internal quotation marks and citation omitted).

Here, the California Supreme Court has not addressed this issue directly. In fact, it appears the *Milliman* court from Maryland is the only appellate decision in the United States confronting the exact question. This Court predicted, using California Supreme Court caselaw, that California would find the collateral source doctrine did not apply. But, upon examining additional California case law from the California Court of Appeals, the Court granted reconsideration. That reconsideration shows a substantial ground for a difference of opinion.

### 4. Immediate Appeal May Advance Ultimate Termination of the Litigation

This type of interlocutory appeal is proper only if it "may materially advance" the litigation. 28 U.S.C. § 1292(b). "[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688 (quoting 28 U.S.C. § 1292(b)).

Gallagher advances three arguments on this point. First, it argues that if it appeals this issue after trial and wins its appeal, then a second trial is likely. (ECF No. 146 at 19). Hence, Gallagher's underlying claim is that the Court's ruling is a reversible error. But many orders can be reversible errors; only the exceptional ones are certifiable under section 1292(b). Therefore, this argument alone is not persuasive.

Second, Gallagher argues that a ruling now could change the parties' settlement postures.

It points to several cases where courts certified orders because uncertainty would delay a settlement. (ECF No. 150 at 9 n.2). The most persuasive to the Court was *Securities and Exchange Commission v. Mercury Interactive, LLC*, No. 5:07-cv-02822-JF, 2011 WL 1335733 (N.D. Cal. April 7, 2011).[5] There, "[t]he bulk of the damages" against the defendants arose under one contested statute, and the court found that "perhaps" an appeal would have a significant effect "upon the parties' efforts to reach a settlement." *Id.* at *3. Therefore, the *Mercury Interactive* court determined the "materially advance" and "controlling question" elements of section 1292(b) were satisfied. *Id.*

Likewise, here, construing the collateral source rule in Gallagher's favor may negate the bulk—or perhaps all—of the damages. Gallagher represents that an immediate resolution would have a significant effect on its settlement position, and the Court finds that representation logical.

Moreover, the issue of damages has been central to the case throughout. Gallagher's motion for summary judgment dealt exclusively with damages. (*See* ECF No. 53 at 2) (listing two issues Gallagher moved for summary judgment on, both of which dealt with damages). Likewise, most of the parties' disputed evidentiary issues in their joint pretrial statement dealt with questions of damages. (ECF No. 68, at 6-10) (eighteen of 22 issues concerning damages).

Finally, Gallagher notes that trial would likely be postponed given the coronavirus pandemic. (ECF No. 146 at 19). Gallagher was correct. (ECF No. 152) (vacating August 2020 trial date). Given the potentially lengthy delay before a trial, an appeal now will not interfere with any currently scheduled dates.[6]

---

[5] All other cases Gallagher pointed to concerned with class actions, which, some of the courts noted, usually settle. *See Sterk v. Redbox Automated Retail, LLC*, 672 F.3d 535, 536 (7th Cir. 2012) ("[U]ncertainty about the status of the destruction claim may delay settlement (almost all class actions are settled rather than tried), and by doing so further protract the litigation. That is enough to satisfy the 'may materially advance' clause of section 1292(b) . . . ."); *Casas v. Victoria's Secret Stores, LLC*, No. CV 14-6412-GW(VBKX), 2015 WL 13446989, at *3 (C.D. Cal. Apr. 9, 2015) ("In view of that, the Court agrees with the Seventh Circuit's pragmatic approach in *Sterk v. Redbox Automated Retail, LLC*, where Judge Posner reasoned that, especially in class actions, uncertainty over a key claim's status 'may delay settlement (almost all class actions are settled ...), and by doing so further protract the [case].'" (brackets and ellipsis in original)); *Costco Wholesale*, No. 13-cv-3598-BLF, 2018 WL 3008532 (N.D. Cal. June 15, 2018) (class action case); *Rollins v. Dignity Health*, No. 13-CV-01450-TEH, 2014 WL 6693891 (N.D. Cal. Nov. 26, 2014) (class action case); *Rivera v. Nibco, Inc.*, No. CV F 99-6443 AWI SMS, 2002 WL 35644972 (E.D. Cal. May 2, 2002) (class action). *Rivera* was a class action when certified for review. By the time the Ninth Circuit addressed the certified question, the class action portions were voluntarily dismissed and there were twenty-three named plaintiffs. *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1061 n.1 (9th Cir. 2004).

[6] There remains substantial uncertainty regarding when jury trials will resume in the district, so it is not certain what

8

In sum, damages are central to the case, and *Mercury Interactive* indicates that certification is proper in this scenario. Moreover, jury trial is currently postponed and there are no plans to hold jury trials soon. Accordingly, the Court finds that an immediate appeal may materially advance the litigation.

Because the Court finds all three criteria are satisfied, the Court certifies the question above for interlocutory review.

**B.     Order on Motion to Preclude Expert Testimony of Jim Toole (ECF No. 114 at 9:11-15:6)**

Gallagher seeks certification of the Court's order to preclude four categories of opinions by one of Gallagher's expert witnesses, Mr. Toole. The first category—that the Authority's damages are $0—were excluded under Rule 702, not the collateral source rule. (ECF No. 114 at 14) ("Thus, Mr. Toole's opinion that damages are $0 because SJVIA is 'effectively a pass-through' is incorrect and unsupported. Accordingly, Mr. Toole's opinions on this subject are excluded under Federal Rule of Evidence 702.").

The Court dismissed the other three categories summarily, stating that they "relate to the argument, analyzed above, that [the Authority's] damages cannot exceed its expenses for any given year." (ECF No. 114 at 9). This rationale was not related to *recouped* damages under the collateral source rule. Rather, it considered what type of damages were *collectable* in the first place. Gallagher has not adequately briefed why any of those issues should be certified, and it does not seem to the Court that this order involved a controlling question of law subject to substantial ground for difference of opinion.[7] Accordingly, the Court will not certify that order.

**C.     Order on Motion to Regarding Single Entity or Pass-Through Entity (ECF No. 114 at 15:7-17:4)**

Gallagher's final certification request concerns the Authority's motion *in limine* to

---

delay if any will result from granting an interlocutory appeal on this issue.

[7] Except for a few sentences, Gallagher's briefing concerned the collateral source rule. Even "unified controlling question of law" that Gallagher proposed to the Court for certification concerned only the collateral source rule: "When a self-funded insurance plan claims damages solely in the form of a premium payment shortfall from its members, may that claim be countered by undisputed evidence showing that the plan had the ability to—and did—later collect premiums from its current members to cover the shortfall?" (ECF No. 150 at 4) (emphases omitted).

9

exclude evidence or argument characterizing the Authority as a pass-through entity. This aspect of the Gallagher's motion suffers from the same failure as the part concerning Mr. Toole's testimony. The order Gallagher challenges does not rely on the collateral source rule whatsoever. Rather, the Court excluded "any reference to [the Authority] as a 'pass-through' entity and to prohibit [Gallagher] from conflating [the Authority] with its members and participating entities," and prohibited Gallagher "from referring to the contractual provisions regarding termination." (ECF No. 114 at 16). The Court's rationales there rested on contractual provisions and whether the Authority terminated under the contract. (*Id.*). Thus, the contested order did not concern any question of law that Gallagher adequately briefed in its instant motion. Hence, the Court will not certify that order for interlocutory review either.

## IV.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART the motion for certification (ECF No. 146) as follows:

1. Under 28 U.S.C. § 1292(b), the Court hereby certifies the following question of law with respect to its Order Granting Plaintiff's Motion for Reconsideration (ECF No. 125):

   A governmental entity that funds health expenses for participating member counties alleges it suffered a shortfall because a consultant's faulty advice caused it to set the member counties' premiums too low for certain years. Does California's collateral source rule bar evidence that the entity increased the premiums for the member counties that remained or joined later to cover the shortfall?

2. The remainder of the motion for certification is DENIED.

IT IS SO ORDERED.

Dated:  **July 6, 2020**                           /s/ Erica P. Grosjean
                                                   UNITED STATES MAGISTRATE JUDGE